# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| TAYLOR NICOLE VARDAMAN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 23-0397-WS-B |
| | ) |
| BENNETT MOTOR EXPRESS, LLC, et al., | ) |
| | ) |
| | ) |
|     Defendants. | ) |

## ORDER

This matter is before the Court on the plaintiff's motion to remand. (Doc. 6). The parties have filed briefs in support of their respective positions, (Docs. 7, 10, 11), and the motion is ripe for resolution. After careful consideration, the Court concludes the motion to remand is due to be granted.

## BACKGROUND

According to the second amended complaint, (Doc. 1-1), the plaintiff's decedent died after being crushed by certain cargo (which the parties describe as a catwalk) that fell from a flatbed trailer. The removing defendant ("Bennett") operated and controlled the trailer and was responsible for the safe loading and securement of the catwalk onto the trailer. The trailer was designed/tested/manufactured/inspected/marketed/distributed and/or sold by the second defendant ("Fontaine"). The second amended complaint asserts claims against Fontaine under the AEMLD and for negligence, wantonness, and breach of warranty. The second amended complaint asserts claims against Bennett for negligence and wantonness.

The original complaint, (Doc. 1-3), was filed in state court in August 2022. Bennett was not named as a defendant. The two defendants were Fontaine and a related entity ("Specialized"). The complaint alleged that the trailer was manufactured, etc. by

Fontaine and/or Specialized, and it presented the same claims against both as against Fontaine in the second amended complaint.

The first amended complaint, (Doc. 1-4), was filed later in August 2022.  It differed from the original primarily by adding Bennett and the allegations and causes of action against Bennett.  The second amended complaint, which removed Specialized as a defendant, was filed in April 2023.

Fontaine moved for summary judgment in August 2023.  (Doc. 1-5).  Its grounds were:  (1) that the testimony of several witnesses established that the catwalk had not been secured to the trailer when it fell; (2) that there was no evidence the trailer was defective or unreasonably dangerous, either when it left Fontaine's control in 1993 or on the day of the incident; and (3) that the testimony of Bennett's witness established that Bennett alone selected the trailer, without any involvement of Fontaine that could give rise to a warranty.  (Doc. 1-5).

The order granting Fontaine's motion for summary judgment issued on September 22, 2023, the same day as the hearing.  (Doc. 1-6).  Bennett removed the action on October 20, 2023, grounding jurisdiction in diversity of citizenship.  Specifically, the plaintiff's decedent was at the time of his death a citizen of Alabama, (Doc. 1-1 at 5), and Bennett, a limited liability company, considers itself to be a citizen of Georgia.  (Doc. 1-6 at 2).[1]  Bennett accepts the allegation of the original complaint that both Fontaine and

---

[1] The notice of removal erroneously calculated Bennett's citizenship using the test applicable to corporations.  When the Court pointed out this defect, Bennett filed a supplement that explores in detail the tangled web of entities and persons whose citizenship affects Bennett's own.  Bennett's motion to amend its notice of removal and disclosure statement to reflect this charting of its citizenship, (Doc. 9), is **granted**.

Many of the entities disclosed in Bennett's filing are trusts, as to each of which Bennett discloses the trustee and their citizenship.  So long as each of these trusts is a "traditional trust," this is adequate.  *Alliant Tax Credit 31, Inc. v. Murphy*, 924 F.3d 1134, 1143 (11th Cir. 2019).  Bennett, however, has not provided sufficient information to determine if the trusts are traditional under the governing test.  *See id*. ("So whether a trust is 'traditional' requires us to refer to the law of the state where the trust is formed," in particular, the relevant state's treatment of the trust as a "juridical person" *vel non*) (internal quotes omitted).  This opinion assumes for argument that the trusts at issue here are traditional, such that Bennett is a citizen only of Georgia, South Carolina, and Wyoming.

Specialized are citizens of Alabama. (*Id*.). Bennet argues, however, that Fontaine was fraudulently joined and that its removal on this ground is timely because it was filed within 30 days of the order granting Fontaine summary judgment.

## DISCUSSION

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). As applicable here, the removing defendant must show "by clear and convincing evidence" that "there is no possibility the plaintiff can establish a cause of action against the resident defendant." *Henderson v. Washington National Insurance Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Stillwell v. Allstate Insurance Co*., 663 F.3d 1329, 1333 (11th Cir. 2011) (internal quotes omitted). The possibility "must be reasonable, not merely theoretical." *Legg v. Wyeth*, 428 F.3d 1317, 1325 n.5 (11th Cir. 2005) (internal quotes omitted). "In making its determination, the district court must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor." *Pacheco de Perez v. AT&T Co*., 139 F.3d 1368, 1380 (11th Cir. 1998).

Bennett does not deny that Alabama recognizes causes of action against a manufacturer for negligence, wantonness, breach of warranty, and under the AEMLD. Nor does Bennett deny that Fontaine manufactured the trailer.[2] Bennett, in short, does not argue that the plaintiff's claims against Fontaine lack legal foundation. Instead, Bennett argues that the plaintiff's claims lack factual support and that the plaintiff never really intended to pursue Fontaine to judgment, anyway.

---

[2] Fontaine conceded as much in its motion for summary judgment. (Doc. 1-5 at 3).

### A. Factual Impossibility.

Bennett argues that the plaintiff's claims against Fontaine are "baseless" because the "trailer was not at fault for the incident," since "the catwalk was not attached or secured to the subject trailer at the time of the incident" and "none of the cargo attachments used to secure the subject trailer had failed to perform." (Doc. 1 at 5-6, 7-8). Bennett points to the plaintiff's December 2022 discovery responses, in which she admitted that the catwalk "had not been chained or strapped to the subject trailer," that it "was not secured to the trailer at the time it fell and crushed" the plaintiff's decedent, and that "none of the cargo attachment points incorporated into the subject trailer failed to function." (Doc. 1-9 at 3-5). Bennett assumes rather than argues that this evidence demonstrates that Fontaine was fraudulently joined.

The Court assumes without deciding that (despite Fontaine's assertion of additional grounds in support of its motion for summary judgment) the lack of any attachment of the catwalk to the trailer of itself doomed every cause of action the plaintiff asserted against Fontaine. Even so, all that Bennett has shown is that, four months after she filed suit, the plaintiff was aware that she could not prove her case against Fontaine. As the name suggests, a fraudulent joinder, if fraudulent joinder there be, occurs when the resident is joined as a defendant, not sometime later. *Henderson*, 454 F.3d at 1281 ("When a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, … [t]he plaintiff is said to have effectuated a 'fraudulent joinder' …."); *accord Stillwell*, 663 F.3d at 1332.

"[A] joinder is fraudulent if the facts asserted with respect to the resident defendant are shown to be so clearly false as to demonstrate that no factual basis existed for any honest belief on the part of the plaintiff that there was joint liability." *Parks v. New York Times Co.*, 308 F.2d 474, 477 (5th Cir. 1962). "The defendant may show bad faith in joinder by proving that the plaintiff stated the facts knowing them to be false, or with enough information within reach so that he should have known them to be false." *Id*. at 478 (internal quotes omitted). That is, "there must be some reasonable basis for believing that there is joint liability." *Id*. at 477.

4

Bennett does not acknowledge *Parks*, but this seminal binding precedent confirms that the question is not whether the plaintiff ultimately realizes, or a defendant ultimately establishes, that a key factual allegation has no support; rather, the question is whether, at the time she joined the resident defendant, the plaintiff had a reasonable basis for believing she could establish the fact, or whether she then knew or should have known that she could not establish the fact.  The plaintiff's December 2022 discovery responses are not "clear and convincing evidence" that she knew or should have known in August 2022 that the catwalk was not attached or secured to the trailer.[3]

This Court has utilized a particular application of the *Parks* standard for use "when the fraudulent joinder inquiry revolves around facts that do not lie within the plaintiff's possession":  in such a case, "the plaintiff's allegations must satisfy Rule 11; that is, after an inquiry reasonable under the circumstances …., the factual contentions have evidentiary support or … will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *Nelson v. Whirlpool Corp.*, 668 F. Supp. 2d 1368, 1377 (S.D. Ala. 2009) (internal quotes omitted).  Bennett does not invoke or apply this standard, and the Court detects no indication that the plaintiff could not satisfy it.

Nor does Bennett rely on *Legg*, which would not assist its motion in any event.  In *Legg*, the plaintiffs were two of thousands that sued a pharmaceutical company ("Wyeth") alleging valvular heart disease from one or another of Wyeth's diet drugs.  The *Legg* plaintiffs engaged in the "common strategy" of such plaintiffs by suing resident sales representatives along with Wyeth, which practice "can only be characterized as a sham." 428 F.3d at 1320 (internal quotes omitted).  Wyeth immediately removed the action,[4] submitting the affidavits of the resident sales reps – one of whom denied ever selling the drugs at issue and the other of whom denied knowing anything about the

---

[3] The plaintiff asserts she did not know, until receiving discovery responses from Bennett after suit was filed, that the catwalk was not secured to the trailer.  (Doc. 7 at 9).  Bennett has not challenged this assertion, and the Court has no reason to question it.

[4] *Legg v. Wyeth*, 2004 WL 5676041 at *1 (N.D. Ala. 2004).

health hazard made the subject of the action. 428 F.3d at 1321. The plaintiffs offered no countering evidence, instead submitting training materials that only "reinforce[d]" the second sales rep's claim of ignorance. *Id*. at 1322. The *Legg* panel focused on the uncontroverted nature of the defendants' affidavits, *id*. at 1322-23, but the more fundamental problem for the plaintiffs was that they identified no "reasonable basis for believing" that these specific sales reps had sold a particular drug or had known of its dangers, especially against the backdrop of a widespread "sham" practice of indiscriminately naming resident sales reps as defendants without such a basis. *Legg* does not purport to require a plaintiff, before naming a resident defendant, to possess affirmative evidence of every fact she must prove against him, and *Legg* does not require a court to find fraudulent joinder whenever a defendant is able to present evidence the plaintiff is unable to contradict. Given *Parks*' status as prior panel precedent, it is doubtful that *Legg* (which did not cite *Parks*) could effectively establish such a standard.

### B. Intent to Pursue to Judgment.

Bennett correctly notes that "a plaintiff's motivation for joining a defendant is not important as long as the plaintiff has the intent to pursue a judgment against the defendant." *Triggs v. John Crump Toyota, Inc.* 154 F.3d 1284, 1291 (11th Cir. 1998). Bennett argues, however, that the plaintiff "never intended" to pursue Fontaine to judgment. (Doc. 1 at 5). Bennett cites the following "evidence" of the plaintiff's intent: (1) both the first amended complaint and the second amended complaint allege that the incident "was not a result of a defective product but instead a result of Bennett Motor's irresponsibility"; (2) the plaintiff withdrew a discovery request asking Fontaine to admit it manufactured the trailer; and (3) the plaintiff did not depose Fontaine or "compel" unidentified "vital, relevant discovery requests" from Fontaine. (*Id*. at 5, 6, 8; Doc. 10 at 2).

> [W]e take the rule to be that there can be no fraudulent joinder unless it be clear that there can be no recovery under the law of the state on the cause alleged, or on the facts in view of the law as they exist when the petition to remand is heard. One or the other at least would be required before it could

>be said that there was no real intention to get a joint judgment, and that there was no colorable ground for so claiming.

*Parks*, 308 F.2d at 478; *accord Bobby Jones Garden Apartments, Inc. v. Suleski*, 381 F.2d 172, 174 (5th Cir. 1968). *Parks* establishes that, while an intent to pursue to judgment is required, whether that intent exists is not a separate inquiry.[5] Because Bennett's assertion of factual impossibility fails for reasons addressed in Part A, his challenge to intent necessarily fails as well.

Even were it proper to consider the plaintiff's intent as Bennett suggests, the proffered indicia reflect no intent not to pursue Fontaine to judgment, either clearly and convincingly or otherwise. As to the allegations of the pleadings, Bennett is simply incorrect: both explicitly allege that, "[a]s a direct consequence of the hazardous and unreasonably dangerous nature of the Fontaine trailer, on May 13, 2022, a heavy industrial component fell from the Fontaine trailer and crushed" the decedent. (Doc. 1-1 at 7; Doc. 1-4 at 10). As to Fontaine's manufacture of the trailer, Fontaine admitted in its answer that it had done so, (Doc. 1-2 at 4), obviating a request for admission. As to additional discovery the plaintiff did not pursue, Bennett fails to identify any, other than a corporate deposition, leaving the Court nothing to consider. As to that deposition, given Bennett's insistence that the catwalk's lack of attachment to the trailer doomed all of the plaintiff's claims against Fontaine, the failure to take the deposition more likely reflects a decision not to throw good money after bad than a pre-suit intent not to pursue Fontaine to judgment.[6]

---

[5] *See also B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 554-55 (5th Cir. 1981) (the question was whether the plaintiff "could have had any intention to obtain a joint judgment" against the non-diverse defendants; the answer was, "insofar as it is possible that a state court might find that the Texas defendant(s) were subject to liability, the joinder of one or more of the defendants was not fraudulent") (internal quotes omitted).

[6] As long as Bennett wants to address indicia of the plaintiff's intent, it should be noted that the original complaint in this case named only Fontaine and Specialized – both of them Alabama citizens – as defendants. Bennett, the diverse defendant, was not added until the first amended complaint. Bennett has not explained why it should be assumed that the plaintiff

7

## CONCLUSION

Because Bennett has failed to show by clear and convincing evidence that Fontaine was fraudulently joined, the Court need not address whether Bennett's removal on this basis was timely. For the reasons set forth above, the plaintiff's motion to remand is **granted**. This action is **remanded** to the Circuit Court of Mobile County.

DONE and ORDERED this 13th day of December, 2023.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

named Fontaine solely to prevent removal by Bennett, with no intent of pursuing Fontaine to judgment, when Bennett was not even a party at the time.